IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLOBETEC INTERNATIONAL, LTD., )
)
              Plaintiff, )
)
v. )   No. 03 C 9257
)
AUGUST WENZLER MASCHINENBAU, GmbH, )
et al., )
)
              Defendants. )

MEMORANDUM OPINION AND ORDER

Illinois corporation Globetec International, Ltd. ("Globetec") has brought this diversity of citizenship action against August Wenzler Maschinenbau GmbH ("Wenzler"), Wenzler USA and Geoff Fuller ("Fuller"), advancing a multicount Complaint that stems from (1) Fuller's departure from his prior employment with Globetec and (2) Wenzler's and Fuller's asserted diversion of business relationships and opportunities from Globetec. Wenzler has answered the Complaint, so that the case is at issue as between it and Globetec. This Court has earlier granted Wenzler USA's Fed. R. Civ. P. ("Rule") 12(b)(6) motion for dismissal. Now at hand is Fuller's fully briefed motion for his dismissal under Rule 12(b)(1).[1]

Both sides agree that where any defendant challenges in personam jurisdiction, the plaintiff bears the burden of

---

[1] Although Fuller also contends that he should go hence under Rule 12(b)(6), this Court has regarded the Rule 12(b)(1) motion as the first order of business and therefore did not ask the parties to brief the Rule 12(b)(6) question fully.

establishing the existence of jurisdiction. In this instance one key to such jurisdiction hinges both on the circumstances under which Globetec and Fuller parted company and on whether Fuller took any action to undercut Globetec's relationship with Wenzler before that termination:

1. Fuller has furnished an affidavit stating that during his July 7, 2003 telephone conversation with Globetec's President Mark Sokniewicz ("Sokniewicz"), the latter told Fuller that he could no longer afford to pay Fuller's salary as a sales representative, so that his employment was therefore terminated immediately. It was after that termination that Fuller entered into an August 1, 2003 consulting agreement with Wenzler USA.

2. Sokniewicz has responded with a counteraffidavit stating that the July 2003 telephone conversation involved Fuller's indication of <u>his</u> belief that Globetec could no longer afford to pay him--as Sokniewicz has it, "I did not terminate him." Sokniewicz also states on information and belief that "Fuller acted as the sales consultant for Wenzler" in the prospective deal that was assertedly diverted from Globetec as a commission agent.

Fuller's counsel adduces (and Globetec's counsel does not dispute) <u>Perdue Research Found. v. Sanofi-Synthelabo S.A.</u>, 338 F.3d 773, 782 (7th Cir. 2003) for the proposition that a

2

plaintiff's burden of making a merely prima facie showing of personal jurisdiction is elevated to a preponderance-of-the-evidence standard if the court holds an evidentiary hearing. Because Fuller's version of events would render quite irrelevant Globetec's inch-thick set of Exhibits 1 through 6 and 7A through 7K, all of which relate to Fuller's activities (entirely within the state of Michigan) that preceded the termination of the Fuller-Globetec relationship, this Court has conducted such a hearing to get to the truth as between Fuller and Sokniewicz, and it finds Fuller's story more credible. This opinion accordingly proceeds on that premise.

Globetec's claims against Fuller are three in number. First it contends that Fuller's post-termination activities (none of which concededly took place in Illinois) breached their contract's restrictive covenant, which broadly prohibited certain post-termination conduct.[2] Globetec's other two claims are that Fuller tortiously interfered (1) with its contractual relations (by having allegedly caused Wenzler to breach its distribution contract with Globetec) and (2) with its advantageous business relationships (by having allegedly deprived it of potential commissions from Michigan company Hayes-Lemmerz, a customer to which Wenzler sold directly). In those respects the asserted

---

[2] Fuller asserts in his Rule 12(b)(6) motion that the restrictive covenant is unenforceable, but this opinion need not (and hence does not) explore that issue.

jurisdictional hook to bring Fuller into this Illinois-based forum is the economic harm suffered by Globetec here.

On that score the seminal due-process-based decision, given the 1989 amendment to the Illinois long-arm statute (735 ILCS 5/2-209(c)) that made its reach coextensive with that of the Due Process Clause, is <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980). In rejecting an expansive view of foreseeability as the relevant standard, <u>World-Wide Volkswagen</u>, <u>id</u>. at 297 said:

> Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

And the Supreme Court went on (<u>id</u>. at 299) to disclaim the financial effects on the defendant within the forum state as sufficient to do the job:

> However, financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.

It is hardly surprising, then, that in the following year the Illinois Supreme Court (in <u>Green v. Advance Ross Elec. Corp.</u>, 86 Ill.2d 432, 438-40, 427 N.E.2d 1203, 1207 (1981)) announced its "explicit rejection of the contention that the tortious act provision of the long-arm statute applies to non-resident defendants whose only contact with Illinois is allegedly causing economic harm within the state" (<u>McIlwee v. ADM Indus., Inc.</u>, 17 F.3d 222, 224 (7th Cir. 1994), citing this Court's discussion of

4

Green and other Illinois caselaw in Club Assistance Program, Inc. v. Zukerman, 594 F.Supp. 341, 346-47 (N.D. Ill. 1984)). To be sure, Green antedated the 1989 extension of Illinois' long-arm legislation to reach the outer boundary of the Due Process Clause, but Green also addressed the issue in World-Wide Volkswagen terms (and hence in federal constitutional terms) and said (86 Ill.2d at 438-39, 427 N.E.2d at 1207 (most citations omitted)):[3]

> Defendants' theory is that although the misconduct of Green, Sr., took place outside Illinois, the consequences of his misconduct were felt in Illinois. They assert an Illinois connection because their Texas operations, including Steel's bank account in Longview, Texas, were funded from corporate assets lodged in Illinois; they thus contend that the misconduct alleged resulted in a drain upon those assets in Illinois. But the consequences upon which defendants rely are too remote from the misconduct of Green, Sr., to support the conclusion that the tortious acts complained of were committed in Illinois. The situs of the last event whose happening was necessary to hold Green, Sr., liable was in Texas. It was there that the alleged improper severance payment was made and the misappropriation and conversion of the labor of corporate employees and use of corporate premises occurred. It was also the place where the alleged improper expenses were charged and the legal retainer agreement entered into. The tortious acts, if any, and the losses or injury were complete when they occurred in Texas. That, therefore, was the place of the wrongs; their commission cannot reasonably or

---

[3] What follows is a far more extensive quotation of prior authority than this Court is wont to employ. But in this case it serves to illustrate the conceptual parallel between the defendant's conduct that was found constitutionally insufficient in Green and Fuller's conduct here. Both cases deal with defendants' conduct outside of Illinois that assertedly impacts plaintiffs financially in this State.

justifiably be transferred to Illinois by the rationale
that their consequence reduced the amount of corporate
assets in this State.

The defendants' view is that a financial tort must be
looked upon from a different perspective than a
physical injury; in the case of the former type of
loss, defendants argue jurisdiction is placed at the
injured party's business headquarters for it is there
that the reduction of assets resulting from the
fraudulent conduct is eventually felt. The first
weakness in this approach is that courts construing
section 17(1)(b)[the tortious-act branch of the long
arm statute[4]] have not found reason to differentiate
between physical and economic injury. The second and
more pronounced weakness is that this theory opens the
gates of long-arm jurisdiction to every Illinois
resident who incurs loss as the result of the fraud of
a nonresident, no matter how distant the misconduct and
circumstances of the loss are from Illinois. A less
tenuous and contrived connection between the tortious
act and this State is required to satisfy the statutory
provision that its commission be within Illinois. See
World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S.
286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490, 502,
where the court concluded that the possibility that
Volkswagen cars sold outside Oklahoma might be used in
Oklahoma was "far too attenuated a contact" to justify
that State asserting jurisdiction.

For its part, Globetec points to Janmark, Inc. v. Reidy, 132 F.3d 1200 (7th Cir. 1997) as claimed support for haling Fuller into court here. But Janmark premised personal jurisdiction over the out-of-state target of an interference-with-prospective-economic-advantage claim on the target's commission of a tort in Illinois (id. at 1202).

In part Fuller's counsel urges that Janmark cannot alter

---

[4] This portion of the Green analysis does not of course apply here. But what follows next (relying as it does on the United States Supreme Court's due process holding) clearly does.

6

Illinois law. That is true but irrelevant: Because Illinois' long arm is now coterminous with the reach of the Due Process Clause, definitive federal jurisprudence is also applicable in construing the Illinois statute. But it also remains true that Janmark does not provide substantive support for Globetec's claims against Fuller in due process terms either. In light of this Court's findings stemming from the evidentiary hearing, all of Fuller's conduct at issue here was <u>after</u> the termination of the Globetec-Fuller contract and <u>after</u> Wenzler's termination of its arrangement with Globetec, and it was totally external to Illinois. Its only potential Illinois "contact" was its effect on Globetec's bank account here. And that is fatal to Globetec's attempted reliance on the Illinois long-arm statute.

Just a few words should be added as to what Globetec contends is an added string to its bow: the contention that Fuller was engaged in the performance of duties as a director or officer of Globetec (see 735 ILCS 5/1-209(a)(12)). For one thing, Fuller points out that he was not really an officer of Globetec while he was in its employ[5]--he says his label of "Vice President of Sales and Marketing" was not an elected officership, but merely a euphemism of the type often employed by corporations in an effort to give some of their people greater credibility

---

[5] There is no question that Fuller was not a Globetec director.

when dealing with customers or the like. That contention seems persuasive, but this Court need not rely on it--instead Globetec misses the point that on the facts ascertained by this Court Globetec's claims do not stem from actions by Fuller in his alleged corporate capacity as an officer. Again the claims against Fuller arise out of his post-employment activities.

## Conclusion

Globetec has not been successful in bringing Fuller within this District Court's purview in terms of in personam jurisdiction. Fuller's motion to be dismissed out of this action is granted, but without prejudice to Globetec's ability to sue him in some other jurisdiction.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 8, 2005